IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIA MIRANDA SORTO

     v.                         :   Civil Action No. DKC 23-2263

CARROLS LLC d/b/a Burger King

**MEMORANDUM OPINION**

     Presently pending and ready for resolution in this disability discrimination case is the motion to compel arbitration and to dismiss action filed by Defendant Carrols LLC doing business as Burger King ("Carrols"). (ECF No. 12). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to compel arbitration and dismiss action will be granted in part and an order compelling arbitration will be entered. The case will be stayed pending completion of arbitration.

## I.   Background

Carrols hired Plaintiff Maria Miranda Sorto[1] ("Ms. Miranda Sorto") on September 30, 2021 and she commenced work as a team member at a Lanham, Maryland Burger King on October 12, 2021. (ECF No. 12-2, at 6).

Carrols contracts with a company called TalentReef to provide electronic employee onboarding services.  (ECF Nos. 12-2, at 5; 12-3, at 2).  TalentReef is involved with Carrols's hiring process from the very beginning—employees apply for a job at Carrols on a TalentReef form, and TalentReef provides onboarding services once the employee is hired.  (ECF Nos. 12-2, at 5; 12-3, at 2).  Carrols provides documents to TalentReef electronically in one of two ways: (1) Carrols can upload PDFs which must be signed or acknowledged; or (2) for documents requiring additional information, such as uniform size, Carrols provides the form to TalentReef, which then configures or codes the document to permit information to be filled in.  (ECF Nos. 12-2, at 5; 12-3, at 2-3).  Because TalentReef does not code the documents uploaded by Carrols as PDFs, the digital signature cannot appear on the document itself as the PDF cannot be manipulated.  (ECF No. 12-3, at 4).  TalentReef ensures that

---

[1] The case caption and complaint refer to Plaintiff as "Maria Sorto."  (ECF No. 1).  Plaintiff's application documents, however, refer to her as "Maria Miranda Sorto" and "Maria Miranda."  (*See, e.g.*, ECF No. 12-2, at 54, 66, 112, 197, 201, 203).  The court will thus refer to Plaintiff as "Ms. Miranda Sorto."

all onboarding documents requiring a signature, acknowledgement, or other information have been completed. (ECF No. 12-3, at 3). TalentReef does not send the documents to Carrols until every document in the onboarding process shows 100% completion. (*Id.* at 3-4).

In order to complete the onboarding documents, the employee must create a unique password. (ECF Nos. 12-2, at 6; 12-3, at 3). Logging onto the system requires a two-step verification process using the employee's personal email address or phone number. (ECF No. 12-3, at 3). Carrols does not have access to employees' unique passwords. (ECF No. 12-2, at 6). An employee must separately click on each document to access it and either sign it or provide any necessary information. (ECF Nos. 12-2, at 6; 12-3, at 3-4).

The onboarding documents include, among others, the arbitration agreement and orientation handbook. (ECF No. 12-2, at 5). Carrols asserts that Ms. Miranda Sorto completed the entire onboarding process and that she digitally signed the arbitration agreement on September 30, 2021. (ECF Nos. 12-2, at 7, 45; 12-3, at 4). Ms. Miranda Sorto attaches the first three pages of the arbitration agreement to her complaint and opposition. (ECF Nos. 1-2, at 1-3; 16-1, at 1-3). She concedes that her signature does appear in the document but argues that it appears on an unmarked and free-floating page that could be from any document

she signed and not necessarily the arbitration agreement. (ECF No. 16, at 2).

Ms. Miranda Sorto ceased working for Carrols on March 21, 2022. (ECF No. 12-2, at 6). On August 18, 2023, she filed a complaint alleging that Carrols discriminated against her on the basis of disability, failed to accommodate, and retaliated against her in violation of the American with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.*, and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 *et seq.* (ECF No. 1). Carrols filed a motion to compel arbitration and to dismiss action on November 27, 2023. (ECF No. 12). Ms. Miranda Sorto filed an opposition on February 8, 2024, (ECF No. 16), and Carrols replied on February 22, 2024, (ECF No. 17).

## II. Standard of Review

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Grant-Fletcher v. Collecto, Inc.*, No. 13-cv-3505-RDB, 2014 WL 1877410, at *3 (D.Md. May 9, 2014) (quoting *Caire v. Conifer Value Based Care, LLC*, 982 F.Supp.2d 582, 589 (D.Md. 2013)). Where, as here, the parties premise their arguments on documents outside the pleadings, courts consider the documents and apply the summary judgment standard. *Samura v. SavaSeniorCare Admin. Servs., LLC*, No. 1:20-cv-02095-SAG, 2020 WL 6946587, at *2 (D.Md. Nov. 25,

2020); *see also Grant-Fletcher*, 2014 WL 1877410, at *3; *Rose v. New Day Fin., LLC*, 816 F.Supp.2d 245, 251-52 (D.Md. 2011).

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a moving party has made that showing, a court must consider the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**III. Analysis**

Carrols seeks enforcement of the arbitration agreement pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). "The FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). An arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

5

contract[.]"  9 U.S.C. § 2.  In considering whether an agreement to arbitrate is enforceable, courts must be "mindful of the FAA's purpose 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'"  *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

To compel arbitration, a litigant must demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins*, 303 F.3d at 500-01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

Section 4 of the FAA provides that if a court is "satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  If, however, "the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."  *Id.*  In other words, "[s]ection 4 . . . requires that the district court—rather than an arbitrator—decide whether the parties have formed an agreement to

arbitrate." *Berkeley Co. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019).

Here, three of the four prerequisites are undisputed:  a dispute exists between the parties, the agreement evidences a transaction involving interstate commerce,[2] and Ms. Miranda Sorto has refused to arbitrate the dispute.  *See Adkins*, 303 F.3d at 500-01 (quoting *Whiteside*, 940 F.2d at 102).  The parties, however, differ on whether an arbitration agreement covers the dispute.  *See id*.  Carrols argues that the arbitration agreement applies to "any and all claims, controversies and disputes related to [Ms. Miranda Sorto's] employment[.]"  (ECF No. 12-1, at 12) (quoting ECF No. 12-2, at 51).  Ms. Miranda Sorto argues that the arbitration agreement does not apply to her discrimination claims because it is unconscionable.  (ECF No. 16, at 1-2).

**A. Valid Agreement to Arbitrate**

In deciding a motion to compel arbitration, the court must "engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."  *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (quoting

---

[2] The Supreme Court of the United States has explained that "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA."  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)).   In so doing, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).   "Under Maryland law, '[t]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'"   *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013) (*quoting CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)).

Ms. Miranda Sorto attests in her affidavit that she "did not sign any document agreeing to arbitration."   (ECF No. 16-2, at 2). In her opposition, however, she argues—conspicuously using passive voice—that the arbitration agreement is "unsigned."   (ECF No. 16, at 9). She contends that Carrols "has not even presented evidence that [she] clicked on the arbitration agreement, much less that she signed the arbitration agreement."   (*Id.*).   She asserts that because "the digital signature pages appear as free floating documents, . . . [Carrols] cannot show that any of the signature pages were in response to any specific policy or agreement" and that "the arbitration agreement itself is devoid of any information personally identifying" her.   (*Id.* at 10).

The decision in *Mason v. Domino's Pizza, LLC*, No. 20-cv-1908-DLB, 2021 WL 4820520 (D.Md. Oct. 15, 2021), is instructive.   There, the plaintiff argued there was no mutual assent because none of

the documents he reviewed online during onboarding referred to arbitration, the policy manual did not refer to arbitration, and the page where he affixed his electronic signature did not have the words "Arbitration Agreement" as shown in the defendant's exhibit. *Id.* at *4. The defendant filed an affidavit from its human resources specialist explaining that new employees: (1) must digitally sign the arbitration agreement, (2) are instructed to review the arbitration agreement, and (3) view a letter stating they have to sign the arbitration agreement to continue employment. *Id.* at *4-5. The defendant also submitted evidence that the plaintiff in particular followed those procedures. *Id.* at *5. Judge Boardman concluded that the defendant had authenticated the electronic signature pursuant to Federal Rule of Evidence 901 and there was no issue of material fact that the plaintiff "reviewed, signed, and agreed to bound by the arbitration agreement." *Id.*

The same is true here. Carrols has provided "overwhelming evidence" that Ms. Miranda Sorto clicked on and signed the arbitration agreement. *Id.* Gerald J. DiGenova ("Mr. DiGenova"), Carrols's former vice president of human resources, attests in his affidavit that Carrols maintains a mandatory arbitration program for all employees and that agreeing to arbitration is a condition of employment. (ECF No. 12-2, at 3-4). Mr. DiGenova states that Carrols "devotes significant resources to ensuring that all employees are fully informed that agreeing to arbitration is a

condition of ongoing employment[]" including by making available a copy of the mandatory arbitration policy and by hanging a poster with the policy at every restaurant. (*Id.* at 4).   Mr. DiGenova also states that TalentReef requires newly hired employees to create a unique password to which Carrols does not have access, and that an employee must personally click on each and every document to access it and sign it. (*Id.* at 5-6).   Mr. DiGenova asserts that an employee's file will only show that it is 100% complete if the employee has signed or completed all documents. (*Id.* at 6).

Ian Raynor ("Mr. Raynor"), the customer success lead at Miratech, which acquired TalentReef in 2022, also attests that the TalentReef onboarding process requires each employee to create a unique password and separately click on each document to access it and either sign it or provide any necessary information. (ECF No. 12-3, at 3-4).   He states that TalentReef does not send the completed information to Carrols until all documents and onboarding steps show 100% completion. (*Id.* at 3).   He also states that he reviewed Ms. Miranda Sorto's TalentReef file and that she signed the arbitration agreement on September 30, 2021. (*Id.* at 4).

Annalyn Stephens, the restaurant general manager for the Carrols Burger King at which Ms. Miranda Sorto worked, attests that a copy of Carrols's mandatory arbitration program poster has

hung on the wall in the kitchen and that a policy binder including the mandatory arbitration program has been located in the office at all times during her employment.  (ECF No. 12-4, at 2).

Carrols attaches as exhibits Ms. Miranda Sorto's TalentReef onboarding documents, which include the arbitration agreement and orientation handbook.  (ECF No. 12-2, at 45-94).  The arbitration agreement provides that Carrols's mandatory arbitration program is "a required condition of your employment," and that "Carrols and you agree that any dispute arising under or related to your employment or this Agreement, including questions of arbitrability, shall be resolved by arbitration before JAMS[.]" (*Id.* at 51).  The orientation handbook contains a section devoted to the mandatory arbitration program, which also states that arbitration is a "required condition of your employment," and that "Carrols and you agree that any dispute arising under or related to your employment or this Agreement, including questions of arbitrability, shall be resolved by binding arbitration before JAMS[.]"  (*Id.* at 82).  The onboarding documents are marked 100% complete, (*id.* at 45), and reflect that Ms. Miranda Sorto digitally signed the arbitration agreement on September 30, 2021 at 11:11:37 am, (*id.* at 54), and digitally signed the onboarding handbook on September 30, 2021 at 11:12:22 am, (*id.* at 94).

Although Ms. Miranda Sorto's name is not filled in on the first page of the arbitration agreement and the signature line on

11

the third page is left blank, the fourth page includes her signature. (*Id.* at 51-54). Mr. Raynor explains that the digital signatures cannot appear on the PDF documents themselves because the PDFs cannot be manipulated. (ECF No. 12-3, at 4).

Ms. Miranda Sorto attests that her cell phone did not allow her to scroll up or down to review the documents, other than directing her to the area to fill in her personal information. (ECF No. 16-2, at 1). Even though she argues that she did not see the documents, the evidence reflects that she clicked on each document and signed the arbitration agreement. *See Mason*, 2021 WL 4820520, at *5 ("Although [plaintiff] claims in his affidavit he never signed the agreement and never read a document referring to the agreement during his online onboarding process, [defendant] has submitted overwhelming evidence to the contrary."); *Campbell v. Comcast Cable Commc'ns Mgmt., LLC*, No. 21-cv-2000-CCB, 2022 WL 4237109, at *5 n.1, *5-6 (D.Md. Sept. 13, 2022), *reconsideration denied*, No. 21-cv-2000-CCB, 2022 WL 17094562 (D.Md. Nov. 18, 2022) (holding that the plaintiff, who argued he did not sign the agreement binding him to arbitration, accepted the arbitration agreement where the defendant's labor and employee relations specialist submitted an affidavit stating that someone logged onto the plaintiff's secure company account using his username and password and clicked on the "I Acknowledge" button). Moreover, Ms. Miranda Sorto does not argue that Carrols prevented her from

12

reviewing the agreement or asserted any pressure to sign it quickly. *See Samura*, 2020 WL 6946587, at *3 n.2.  Indeed, the evidence indicates that Ms. Miranda Sorto had the opportunity to review the poster and policy binder in the restaurant at any time. (ECF No. 12-4, at 2).  Nor does Ms. Miranda Sorto argue that her signature was forged.

Even viewing the facts in the light most favorable to Ms. Miranda Sorto, beginning her employment for Carrols required that her onboarding documents be 100% completed, which in turn required someone to log on with Ms. Miranda Sorto's unique password and digitally sign the documents.  *Cf. Grant-Fletcher*, 2014 WL 1877410, at *6 ("Even viewing the facts in the light most favorable to the Plaintiff, in order to use the phone service that was the subject of the contract, she would have had to acknowledge acceptance of those Terms by one means or another.").  A review of the affidavits and other evidence submitted by the parties thus shows no genuine dispute of material fact that Ms. Miranda Sorto clicked on, signed, and agreed to be bound by the arbitration agreement.

Additionally, courts have held that when an employment contract is conditioned upon the employee's acceptance of an arbitration agreement, continued employment can constitute assent even when the employee did not sign the arbitration agreement. *See, e.g.*, *Rakowski v. Best Buy Stores, L.P.*, No. 20-cv-1107-ELH, 2020 WL 6485085, at *10 (D.Md. Nov. 3, 2020) (quoting *Gordon v.*

*TBC Retail Grp., Inc.*, No. 2:14-cv-03365-DCN, 2016 WL 4247738, at
*10 (D.S.C. Aug. 11, 2016)) ("'[I]t is generally recognized that
continued employment can constitute acceptance of a contract,'
including an agreement to arbitrate, 'when such employment is
conditioned on acceptance of the contract.'"); *Samura*, 2020 WL
6946587, at *3 (holding that the plaintiff had assented to
arbitration even when he did not sign the agreement because his
"candidacy for the job and his eventual employment were explicitly
contingent upon his signing of the [a]greement[]"); *Hightower v.
GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001) (finding that the
plaintiff "knew of and assented to" an arbitration agreement
because he signed an attendance sheet acknowledging receipt of
arbitration materials and "continued working at the [defendant]
for approximately three months[]" after learning that the terms of
the arbitration agreement would apply to him").

Here, the arbitration agreement and the orientation handbook
expressly provide that the mandatory arbitration program is a
condition of all employees' continued employment. (ECF No. 12-2,
at 51, 82).  Ms. Miranda Sorto continued working at Burger King
for at least five months after completing her onboarding process.
(ECF No. 1 ¶¶ 3, 31).  Hence, even if Ms. Miranda Sorto did not

sign the arbitration agreement, her continued employment constituted assent to the mandatory arbitration program.[3]

Ms. Miranda Sorto also argues that Carrols's promise was illusory and therefore the arbitration agreement was not supported by sufficient consideration. (ECF No. 16, at 8). Under Maryland law, contracts require consideration to be binding and enforceable. *Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 147 (2003). "A promise becomes consideration for another promise only when it constitutes a binding obligation." *Id.* at 148. A promise that "does not actually bind or obligate the promisor to anything" is said to be an illusory promise. *Id.* According to Ms. Miranda Sorto, the arbitration clause is illusory because the orientation handbook provides that Carrols reserves the right at any time to change, delete, or add to any of the provisions at its sole discretion. (ECF No. 16, at 8).

This argument was rejected in *Ratliff v. CoStar Realty Info., Inc.*, No. 11-cv-0813-DKC, 2011 WL 2680585 (D.Md. July 7, 2011). There, the plaintiff also argued that the arbitration clause in the agreement was illusory because the employee handbook provided that the employer had the right to change any of its guidelines,

---

[3] Ms. Miranda Sorto contends that her continued employment does not constitute acceptance of the arbitration agreement because Carrols did not intend to be bound until she signed the arbitration agreement. (ECF No. 16, at 11-13). The evidence, however, indicates that she did sign the arbitration agreement.

policies, practices, working conditions, or benefits at any time. *Id.* at \*3. This court ruled that because the agreement was a separate document from the employee handbook, it "must limit its search for supporting consideration to [the] four corners[]" of the arbitration agreement. *Id.* at \*4. Because the arbitration agreement imposed the mutual obligation to submit any dispute to arbitration, this court held that the agreement was not illusory. *Id.*

So too here. The orientation handbook contains a description of the mandatory arbitration program, but the arbitration agreement itself is a separate document from the orientation handbook. (ECF No. 12-2, at 51-57, 82-84). Thus, the arbitration agreement is "not affected by [Carrols's] unilateral ability to change or revoke the policies set forth in its employee handbook[,]" and the court will only consider the four corners of the arbitration agreement when determining whether it is supported by consideration. *Ratliff*, 2011 WL 2680585, at \*4.

The arbitration agreement imposes mutual obligations on Ms. Miranda Sorto and Carrols. The agreement provides that "Carrols and you agree that any dispute arising under or related to your employment or this Agreement, including questions of arbitrability, shall be resolved by arbitration before JAMS[.]" (ECF No. 12-2, at 51). "[M]utual promises to arbitrate act as an independently enforceable contract . . . [E]ach party has promised

16

to arbitrate disputes arising from an underlying contract, and each promise provides consideration for the other." *Holloman v. Cir. City Stores, Inc.*, 391 Md. 580, 593 (2006) (quoting *Cheek*, 378 Md. at 153). Because the parties mutually agreed to arbitrate all disputes arising under or related to Ms. Miranda Sorto's employment, there is no genuine dispute of material fact that the agreement was supported by adequate consideration. *See Ratliff*, 2011 WL 2680585, at *4.

The evidence reflects that the arbitration agreement was supported by mutual assent, definite terms,[4] and sufficient consideration. Thus, the arbitration agreement is a valid contract.

**B. Unconscionability**

Next, Ms. Miranda Sorto argues that Carrols's motion should be denied because the arbitration agreement is procedurally and substantively unconscionable.

The FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an

---

[4] Ms. Miranda Sorto does not argue the terms of the agreement were not definite. Indeed, the arbitration agreement explains the mandatory arbitration process and sets forth the claims subject to arbitration. (ECF No. 12-2, at 51-53).

agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  "An unconscionable bargain or contract has been defined as one characterized by 'extreme unfairness,' which is made evident by '(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'" *Walther v. Sovereign Bank*, 386 Md. 412, 426 (2005) (quoting *Black's Law Dictionary* 1560 (8th ed. 2004)).  "Thus, 'Maryland contract law on unconscionability contains two components, a procedural and substantive aspect.'" *Ratliff*, 2011 WL 2680585, at *5 (quoting *Dieng v. Coll. Park Hyundai*, No. 09-cv-0068-DKC, 2009 WL 2096076, at *5 (D.Md. July 9, 2009)).  In *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), the Fourth Circuit explained the particular characteristics of procedural and substantive unconscionability:

> Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief (for instance, "I have the right to cut off one of your child's fingers for each day you are in default"), while procedural unconscionability deals with the process of making a contract—"bargaining naughtiness" (for instance, "Just sign here; the small print on the back is only our standard form").  Each of these branches of unconscionability has common-law cousins; procedural unconscionability looks much like fraud or duress in contract formation, and substantive unconscionability reminds us of contracts or clauses contrary to public policy or illegal.

18

*Id.* at 296 n.12 (quoting J. White & R. Summers, *Uniform Commercial Code* § 403, at 186 (3ᵈ ed. 1988) (footnote omitted)).  "To support a finding of unconscionability, Maryland courts require a showing of both substantive and procedural unconscionability[.]" *Singh v. Lenovo (United States) Inc.*, 510 F.Supp.3d 310, 321 (D.Md. 2021).

Ms. Miranda Sorto argues that the arbitration agreement is procedurally unconscionable because the jury waiver is not bolded and the agreement is buried in a collection of documents,[5] she was not able to read it, and it is a contract of adhesion. (ECF No. 16, at 4-6, 7-8).  Carrols acknowledges that its arbitration program is a mandatory condition of employment but asserts that courts enforce similar clauses and no binding precedent supports striking down the agreement merely because it is a condition of employment. (ECF No. 17, at 4).  Carrols also argues that not reading a contract is not a defense to enforcement.  (*Id.* at 5).

In Maryland, "'the law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms.'"  *Walther*, 386 Md. at 429 (quoting *Merit Music Serv., Inc. v. Sonneborn*, 245 Md. 213, 221-22 (1967)).  "[A]s a general rule, when one signs a release or other instrument, he is presumed in law to have read and understood

---

[5] Ms. Miranda Sorto advances these arguments in her section devoted to substantive unconscionability.  Because these are procedural arguments, the court will address them in its procedural unconscionability analysis.

its contents, and he will not be protected against an unwise agreement[.]" *Id.* (quoting *Vincent v. Palmer*, 179 Md. 365, 375 (1941)). "However, contracts of adhesion-those 'offered on a take-it-or-leave-it basis, with no opportunity for negotiation'—are *procedurally* unconscionable under Maryland law and enable a substantively unconscionable challenge to the contract." *Rose*, 816 F.Supp.2d at 256-56 (quoting *Walther*, 386 Md. at 430).

Contrary to Ms. Miranda Sorto's assertion, the arbitration agreement was not buried in the middle of a lengthy contract. It begins on the fifth page in her onboarding documents, right after her employment application and position description. (ECF No. 12-2, at 45, 51). The agreement itself is only three pages (four with the signature page). It is not written in particularly small print. It is labelled conspicuously in bolded and capitalized letters. The jury waiver is not bolded or underlined, but is sufficiently conspicuous as it occurs in both the second sentence and the last paragraph of the agreement. (*Id.* at 51, 53). Ms. Miranda Sorto's assertion that the court in *Randolph v. RRR Bowie, LLC*, No. 22-cv-2150-PX, 2023 WL 7110516 (D.Md. Oct. 27, 2023), enforced a jury waiver solely because it was bolded and underlined is incorrect. (ECF No. 16, at 7). In *Randolph*, Judge Xinis mentioned that the jury waiver was bolded and underlined merely as support for the conclusion that the waiver was not inconspicuous. *Randolph*, 2023 WL 7110516, at *4.

20

As Carrols states, not having read the agreement does not render it procedurally unconscionable. *See Walther*, 386 Md. at 444 ("If petitioners did not [read the arbitration agreement] before they signed the agreement, they have no persons to blame but themselves."). Ms. Miranda Sorto has presented evidence that her cell phone did not allow her to read the documents, (ECF No. 16-2, at 1), but she does not argue that Carrols prevented her from using the computer in the restaurant or from reading the agreement in the policy binder or poster. *Cf. Randolph*, 2023 WL 7110516, at *5 ("Mere averments of general difficulty accessing a hard copy of the Agreement when electronic viewing options had been indisputably available does not render enforcement of the Arbitration Agreement so grossly unfair that it must be set aside as unconscionable.").

Both parties have presented evidence that the arbitration agreement was presented on a take-it-or-leave-it basis, with no opportunity to negotiate the terms. (ECF Nos. 12-2, at 51, 82; 16-2, at 1-2). Some courts have concluded that a job conditioned upon signing an arbitration agreement does not constitute adhesion. *See, e.g.*, *Samura*, 2020 WL 6946587, at *3 n.2 ("That Defendants conditioned consideration of his job application on signing the form, without more, is not adhesion."). Other courts have held that when the defendant presented the arbitration agreement on a take-it-or-leave-it basis, with no chance to

21

negotiate the terms, a reasonable fact finder could conclude that the arbitration agreement was a procedurally unconscionable contract of adhesion. *See, e.g.*, *Rose*, 816 F.Supp.2d at 257.

Even if the arbitration agreement is a contract of adhesion, however, it is not "automatically deemed *per se* unconscionable." *Walther*, 386 Md. at 430.  Rather, "[a] court will . . . look at the contract and its terms with some special care . . . but it will not simply excise or ignore terms merely because . . . they may operate to the perceived detriment of the weaker party." *Id.* at 431 (quoting *Meyer v. State Farm Fire & Cas. Co.*, 85 Md.App. 83, 89-90 (1990)).  In other words, the agreement must be both procedurally and substantively unconscionable. *Ratliff*, 2011 WL 2680585, at *5 (quoting *Dieng*, 2009 WL 2096076, at *5).

The court has already determined that:  (1) the handbook's provision that Carrols reserves the right to change, delete, or add to any of its provisions does not render the arbitration clause illusory; (2) there is no genuine dispute of fact as to whether Ms. Miranda Sorto signed the arbitration agreement; and (3) even if Ms. Miranda Sorto had not signed the agreement, her continued employment constituted her assent to be bound by the arbitration agreement.  Ms. Miranda Sorto advances no other arguments as to why the arbitration agreement is substantively unconscionable. (ECF No. 16, at 8-13).  Moreover, "the agreement does not deprive [Ms. Miranda Sorto] of the right to raise any substantive claim;

rather, it merely requires that those claims be decided by an arbitrator instead of a court." *Ratliff*, 2011 WL 2680585, at *7; *see also Rose*, 816 F.Supp.2d at 259 ("That an agreement restricts a party's access to a court does not make it unfair; the arbitration is not inferior to the courtroom.").

Because there is no genuine dispute of material fact as to whether the arbitration agreement is substantively unconscionable, it will be enforced.

### C. Remedy

Until recently, many courts in this district would dismiss the complaint upon finding the arbitration agreement enforceable if all claims were to be resolved there. *See, e.g.*, *Mason*, 2021 WL 4820520, at *6 (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001)) ("The arbitration agreement is a valid, enforceable agreement that covers all of [plaintiff's] claims in this litigation. Accordingly, [plaintiff's] claims must be arbitrated, and 'dismissal is the proper remedy.'"); *Ratliff*, 2011 WL 2680585, at *8 (citing *Choice Hotels*, 252 F.3d at 709-10) ("Because all of Plaintiff's claims are subject to binding arbitration, the proper remedy is dismissal of the complaint."). Other courts, however, stayed the action pending resolution of arbitration. *See, e.g.*, *Samura*, 2020 WL 6946587, at *3 ("The case will be stayed, though

administratively closed, pending the arbitration, to ensure Defendants' continued follow-through.").

The Supreme Court of the United States recently held, however, that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, No. 22-1218, 2024 WL 2193872, at *4 (U.S. May 16, 2024). Indeed, the Court held that § 3 provides only for a stay and does not permit dismissal unless "there is a separate reason to dismiss, unrelated to the fact that an issue in the case is subject to arbitration." *Id.* at *3 n.2. Here, Ms. Miranda Sorto has not requested a stay or opposed dismissal. Nevertheless, the Court's ruling that the statute provides only for a stay will be applied.

## IV.  Conclusion

For the foregoing reasons, Carrols's motion to compel arbitration will be granted in part. The case will be stayed, but administratively closed, pending resolution of arbitration. A separate order will follow.

    /s/
DEBORAH K. CHASANOW
United States District Judge
